17395

The STATE, Respondent, v. Charles H. HEATH, Appellant

(102 S. E. (2d) 268)

*Charles H. Heath,* of Greenville, *representing himself as* *Defendant-Appellant,*

386

*James R. Mann, Esq., Solicitor,* of Greenville, *for Respondent,*

March 3, 1958.

STUKES, Chief Justice.

Appellant was indicted under Section 16-363 of the Code of 1952 for the embezzlement of $51,312.42 of the funds of Greenville County School District. Upon trial he was convicted by the jury of the embezzlement of $30,153.71. He was the Chief Accountant of the Veterans' Division of the School District and was charged with the duties of the collection, safekeeping and deposit of the funds. They largely consisted of the tuition fees of veteran students, which were derived from the federal government under the "G. I. Bill." There is no question upon appeal as to the sufficiency of the evidence to convict, so it need not be reviewed. It was voluminous. About forty witnesses testified for the prosecution and thirty-five for the defense. Documentary evidence made up about seventy-five exhibits. After verdict and denial of motion for new trial the defendant was sentenced to serve nine years and ten months at hard labor in the State Penitentiary or upon the public works of the county, and to pay a fine of $10,000.00. This appeal followed.

Two unusual incidents in the trial give rise to grounds of appeal. The attorney who was assisting the solicitor at the trial called upon the defendant to produce certain documents, in accord with prior notice. Defendant's counsel responded, "Now, Mr. Price, I wouldn't give you air in a jug * * *", to which the prosecutor

replied, "I'm just making a legal demand. He talks about air in a jug. I might smell N.A.A.C.P. in the jug and I wouldn't want it." Thereupon defendant's counsel moved for mistrial upon contention of prejudice of the defendant before the jury. Arguing it, in the absence of the jury, counsel said, "Everyone knows I have been very actively associated with the N.A.A.C.P. * * *." The motion for mistrial was overruled. Point was also made of the matter after verdict, upon defendant's motion for new trial. Upon argument of it defendant's counsel said, "I have made numerous speeches for the N.A.A.C.P. and I have appeared in court for that organization." He had previously argued it at length in his address to the jury, contending that the reference was made by the prosecutor in order to prejudice the defendant, and there said again that everyone is familiar with counsel's association with N.A.A.C.P.

The court concluded, and we agree, that everyone's knowledge of counsel's association with, and representation of, the organization to which reference was made included the knowledge of the members of the jury; and that no new information was brought to their attention by the irrelevant remark of the assistant prosecutor who said that he was only replying to counsel "in kind." The court, in ruling, tersely inquired of counsel, "If everyone knew it, every member of the jury knew it, (and) how could it prejudice you if everybody knew it?" Whatever odium, if any, which may have arisen from the association and representation, to which reference was made, it was neither increased nor made more widespread by the remark. No question of race was involved in the trial; defendant, his counsel and the prosecutors are all of the White race. It was an unseemly personal exchange between the attorneys, initiated by defendant's counsel whose improper thrust provoked the irrelevant remark of the prosecutor. However, no prejudice could have resulted and it was not error to decline to declare a mistrial or grant a new trial upon this alleged ground. Appellant's contention thereabout is therefore dismissed.

After the conviction and sentence of the defendant, this counsel who represented him at the trial filed notice of intention to appeal. Thereafter the defendant released the counsel and has prosecuted the appeal *in propria persona*. He orally argued it with aplomb and filed a lengthy brief which has been carefully considered.

The other incident of the trial which is made a ground of appeal, having been unsuccessfully urged .upon motion for mistrial and later for a new trial, arose in the following manner. As indicated above, the trial was a very long one. It was begun on January 9, and concluded on January 26, 1956. The jury was not confined but was allowed to separate during recesses. On January 21, which was a Saturday and after recess of the court for the weekend, information came to the solicitor that effort would be made by a certain individual to contact and influence a certain member of the trial jury, or another certain juror. The solicitor thereupon instructed the county Criminal Investigator and the sheriff's office to attempt to prevent any such contact. The Investigator spent the latter part of the afternoon in his automobile in the neighborhood of the home of one of the designated jurors, riding by the home a time or two and parking nearby. He saw the juror at his home at one time but did not know whether the juror saw him. He did not communicate with the juror and there is no evidence that the juror knew that he was under surveillance. As to the other juror, he was operating his gasoline filling station in a suburb and a sheriff's deputy spent the late afternoon and the early part of the evening mostly in a store which was on an opposite corner, where he could observe the juror during his usual activity about his filling station. A part of the time he sat in his automobile which was parked in a vacant lot across from the filling station. As in the case of the other juror, there was no communication by the officer with him and no evidence that he knew that he was being watched. On the contrary, the evidence negatives such knowledge on the part of either juror. The

automobiles of the officers were unmarked and without identification as official cars. The officers testified that their purpose was to protect the jurors from contact by the man who they were told might try to make such contact. Neither officer saw him during their surveillance of the jurors.

On the morning of Monday following the Saturday surveillance, the officers reported to the solicitor that no attempted contact by the suspect with either juror was discovered, whereupon the matter was not pursued any further by the officers. The solicitor then reported the occurrence to the trial judge in his chambers, without the presence of the defendant's counsel, which was made a further ground of motion for mistrial and later for new trial.

Upon his motion for mistrial defendant's counsel was permitted to call witnesses, which he did, including the solicitor and the investigating officers, the gist of whose testimony has been stated above. Some of the evidence was taken before the verdict was returned. Because of the unavailability at that time of additional witnesses whom counsel wished to call, sentence was deferred and the matter was held in abeyance until several weeks later when the hearing was concluded after the examination of additional witnesses who were called by defendant's counsel; notably, none of them was a juror.

The court denied the motions for mistrial and new trial and on the latter ruled as follows, addressing counsel:

"Let me say this in the beginning. I must commend the Solicitor for his actions in this matter. He is an officer of this Court. It is his duty and the duty of the Court to protect the integrity of the jury and of the Court. When the Solicitor reported to me that he had information that some jurors, he called no names, might be approached, he didn't say by whom, one side or another, he then asked my advice as to his duties in the matter. I advised the Solicitor to advise the Sheriff's office and to take such steps as was necessary to prevent anybody attempting to contact any

member of that jury either for the State or for the defense. And that if they got any evidence of that then to report it to the Court and the Court would handle it properly. That was not a matter affecting the rights of your client at all. It was trying to preserve the integrity of your client as much as it was the State and the Solicitor instead of being condemned for it should be most highly commended. He appreciates the position that he occupies and was fearless in carrying out that duty in reporting this matter to the Court. If it had been a matter going into the merits of the case, of course, I feel sure he would not have approached me and I certainly would not have discussed it with him. Now, bear this in mind, a jury when confined to their room during the trial of the case is not because you have no confidence in the jury, that's not the purpose of it but it is to protect those jurors from any interference from anybody who might be interested in the case; and that is laid down by the law and that's all that was done in this case, to protect the interests of both the State and the defense to see that no one attempted to contact a member of that jury. I am satisfied, having confidence in our jury system, that if a juror had been approached by any one they would have carried out their instructions and have reported it to me; but, still that did not relieve the Court of its duty to take such steps as were proper and necessary to keep any juror from being interfered with by anybody regardless of whether they did it for the State or for the defense. I don't think the Court nor the Solicitor has anything to apologize for."

From other portions of the record it appears that the court was mistaken in indicating the time of the solicitor's report. It was on Monday morning immediately before the court convened, after the solicitor had received the information on the preceding Saturday during the weekend recess. Several weeks had elapsed between the occurrence and the above quoted ruling from the bench, which explains the inadvertence.

We find no reversible error in the foregoing. It was ■ not proper for the solicitor to confer privately with the trial judge, *Duncan v. McDougal,* 101 S. C. 373, 85 S. E. 906, but no prejudice to appellant resulted. The conference had no bearing upon the guilt or innocence of appellant of the charge upon which he was on trial. The court may have then, in its discretion, confined the jury for the remainder of the trial, but such course coming that late in the long trial may conceivably have aroused the suspicions of the jurors to the prejudice of appellant. That was the decision of the court, and we think it was a wise one.

Necessarily the conduct of a trial is largely within the ■■ discretion of the presiding judge, to the end that a fair and impartial trial may be had. (Here he was an able judge and of long and successful experience.) 53 Am. Jur. 49, Trial, Sec. 34. Particularly, it has been repeatedly held that the granting or refusal of a motion for mistrial on account of an occurrence during a trial is within the sound discretion of the trial judge and his disposition of the motion will not be reversed upon appeal in the absence of a showing of abuse of discretion, which is absent here. *Gordon v. Rothberg,* 213 S. C. 492, 50 S. E. (2d) 202. *Mock v. Atlantic Coast Line R. R. Co.,* 227 S. C. 245, 87 S. E. (2d) 830. *Wynn v. Rood,* 228 S. C. 577, 91 S. E. (2d) 276.

The remaining ground of appeal relates to the sen ■■ tence which it is contended by the exceptions was not proportionate to the amount embezzled, and was excessive considering the fact that appellant was found guilty of embezzling an amount only slightly larger than one-half of the amount with which he was charged in the indictment. The punishment prescribed by the statute, Sec. 16-363, is, quoting, "Fine and imprisonment, in the discretion of the court, such fine and imprisonment to be proportioned to the amount of the embezzlement." Const. of 1895, Art. 10, sec. 12. In this connection, the amount charged in the indictment is immaterial. It is not contended that the statute is violative of Art. 1, sec. 19, of the Constitution, which forbids cruel and unusual punishment.

In view of the sentences in the following like cases, it does not appear that the sentence in the instant case was out of proportion: *State v. Alexander,* 140 S. C. 325, 138 S. E. 835, embezzlement $10,235.53, indeterminate. sentence of five to ten years and $1,000.00 fine; and *State v. Bikle,* 180 S. C. 400, 185 S. E. 753, $1,049.14, five years and $100.00. Compare *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532, who was convicted of the embezzlement of $733.53 and sentence of seven years and fine of $800.00. was reversed and the case remanded for resentence of the defendant. The appellant at bar has been found guilty of the embezzlement of a much greater sum than any of these. We find no error in the sentence.

Affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.