# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

James Scott Cross, Petitioner.

Appellate Case No. 2016-001939

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Abbeville County
Frank R. Addy Jr., Circuit Court Judge

---

Opinion No. 27903
Heard May 3, 2018 – Filed July 24, 2019

---

## REVERSED AND REMANDED

---

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, all for Respondent.

---

**JUSTICE JAMES:** James Scott Cross was convicted of first-degree criminal sexual conduct (CSC) with a minor and committing a lewd act on a minor. The trial court sentenced Cross to an aggregate prison term of twenty-five years. Cross

appealed, and the court of appeals affirmed. *State v. Cross*, Op. No. 2016-UP-257 (S.C. Ct. App. filed June 8, 2016). We granted Cross's petition for a writ of certiorari. We reverse and remand for a new trial, holding the trial court erred in denying Cross's motion to bifurcate his trial.

## I. FACTUAL AND PROCEDURAL HISTORY

A child (Minor) accused James Scott Cross of sexually abusing her when she was thirteen years old. The indicted charges arise from an incident that allegedly occurred during the afternoon of December 29, 2005. Minor claimed Cross and his wife visited Minor's parents in their home and that she and two other children went outside to play hide-and-seek with Cross in a field near her home. Cross was thirty-five years old at the time. Minor testified at trial that as it was getting dark, Cross followed her behind a tree and started to kiss her and touch her breasts and vagina. She testified Cross forced her to have vaginal intercourse and then threatened to harm her or her family if she told anyone. Minor testified she returned home immediately after the assault, went into her room, took a bath, and wrote about the assault in her diary the same evening. Her father testified that about one month later, he was looking for something in Minor's room while Minor was visiting her grandparents, picked the lock on Minor's diary, and read the incriminating entry. Minor's mother testified she gave the relevant diary pages to a county deputy who responded to the residence when she and Minor's father reported the incident to the Abbeville County Sheriff's Office on January 31, 2006. The diary pages were not accounted for at trial.

Minor was examined by a pediatrician on February 22, 2006. The pediatrician testified at trial that Minor "had basically a normal physical exam for a child." The pediatrician also testified that a sexual assault upon a thirteen-year-old female may or may not result in physical trauma. The pediatrician further testified that any minor trauma could have healed during the two months between the alleged incident and the physical examination.

In April 2006, Cross was indicted for one count of committing or attempting to commit a lewd act on a minor.[1] In 2013, Cross was indicted for first-degree CSC with a minor. The 2013 charge arose from the same allegations recited above. The

---

[1] The lewd act statute was repealed in 2012. The crime formerly known as lewd act is now known as third-degree CSC with a minor and is codified in section 16-3-655(C) of the South Carolina Code (2015).

offense of first-degree CSC with a minor is codified in section 16-3-655(A) of the South Carolina Code (2015); this section provides in pertinent part:

> (A) A person is guilty of criminal sexual conduct with a minor in the first degree if:
>
> . . . .
>
> (2) *the actor engages in sexual battery* with a victim who is less than sixteen years of age *and the actor has previously been convicted of, pled guilty or nolo contendere to, or adjudicated delinquent for an offense listed in Section 23-3-430(C)* or has been ordered to be included in the sex offender registry pursuant to Section 23-3-430(D).

(emphasis added). Section 23-3-430(C) of the South Carolina Code (Supp. 2018) lists twenty-three qualifying sex-related offenses, including the offense of first-degree CSC with a minor. Cross had a prior conviction for first-degree CSC with a minor, having pled guilty to that offense in 1992. This 1992 conviction allowed the State to obtain an indictment for first-degree CSC with a minor under section 16-3-655(A)(2). Otherwise, Cross would have faced a charge of second-degree CSC with a minor under section 16-3-655(B)(1), which states a person is guilty of second-degree CSC with a minor if "the actor engages in sexual battery with a victim who is fourteen years of age or less but who is at least eleven years of age."

Cross was tried in October 2013. During a pretrial hearing, Cross moved for his trial to be bifurcated, arguing he would be unfairly prejudiced if evidence of his 1992 conviction and his sex offender registry status were introduced to prove the prior conviction element of the CSC charge. He requested that the lewd act charge and the sexual battery element of the first-degree CSC with a minor charge be presented to the jury first, and if the jury concluded he committed sexual battery, then evidence of the prior conviction could be presented to the jury during the next stage of the trial. Cross argued:

> There are significant credibility issues, and we're up to our eyeballs here in credibility issues. I think that the minute that the jury hears . . . that [Cross] has been previously convicted of the exact same crime, given that we're talking about a crime against a child on two occasions, I think [the jury is] going to latch on to that and they're going to feel

that it -- that it shows his predilection to this type of offense. It's going to be propensity evidence as received by them.

Cross urged the trial court to perform a Rule 403, SCRE, analysis if it decided to deny his motion to bifurcate. He argued his case is distinguishable from the first-degree burglary line of cases which permit the admission of this type of evidence to prove the prior conviction element of the first-degree burglary statute.[2] Cross contended the issue was more akin to the issue in *Old Chief v. United States*, 519 U.S. 172 (1997). Cross also offered to stipulate in camera that he has a prior qualifying conviction under section 23-3-430(C), contending there was no better proof of this element of the crime than his concession. He argued his in camera admission would not hamper the State's presentation of its case.

The trial court inquired whether a Rule 403 analysis would be appropriate. Of course, Cross argued such an analysis was necessary. The State argued a Rule 403 analysis was not necessary. The trial court ruled:

> I don't know what could be more probative -- when we're dealing with an element of the crime, nothing could be more probative than the fact that there's an indictment indicating that he was convicted of or pled guilty of a crime. I don't know that you get better evidence of that in terms of proving an element that the legislature has decided to include within the . . . CSC with a minor first [statute]. So clearly the probative value for the State is extreme. The prejudicial effect, in my opinion, can be addressed by simply explaining to the jury that they're to draw no inference from the fact that he was previously convicted of this. I have every reason to believe that this is an intelligent jury. . . . So that would be my ruling on that. I don't see the need to bifurcate, and I appreciate your position, however, your objection is noted for the record.

Minor's trial testimony on direct examination is summarized above. Minor was cross-examined in detail at trial about a statement she gave to Anderson County

---

[2] *See, e.g.*, *State v. Benton*, 338 S.C. 151, 155-56, 526 S.E.2d 228, 230 (2000) (concluding the probative value of admitting the defendant's prior burglary and/or housebreaking convictions is not outweighed by its prejudicial effect when proving the prior conviction element of first-degree burglary).

law enforcement regarding an incident that Minor claimed occurred between her and Cross's brother at some point close in time to the indicted incident.  In that statement, Minor related that Cross's brother had performed oral sex on her while they were watching television.  According to the statement, Minor related that on another occasion, the brother performed oral sex on her and then had sexual intercourse with her for fifteen or thirty minutes.  Minor testified on cross-examination that these two accounts were "a lie."  However, on re-direct, Minor testified she indeed had sexual intercourse with the brother at the Cross home in Anderson after the indicted incident but before her father discovered her diary.  She explained her earlier inconsistency involved only the amount of time the brother's assault lasted.

After Minor's testimony and over Cross's objection, the indictment and sentencing sheet establishing the 1992 conviction were introduced into evidence.  The trial court then gave the following limiting instruction to the jury:

> In this case, the State has introduced this previous conviction whereby [Cross] was convicted of criminal sexual conduct with a minor.  The only reason that this conviction is being admitted . . . is that it is an element -- it is one of the elements of the underlying charge that we are trying here today.  So this conviction can only be considered by you, if at all, or if you conclude that it's true as an element of the current charge of CSC with a minor first degree, and this indictment, or this conviction, can be considered by you for no other purpose whatsoever.  Again, the prior conviction is only evidence of one of the elements that the State has to prove that I'll explain to you later in order to support a conviction in the case that we are currently trying.  You cannot consider in any way, shape, or form [Cross's] prior record or this prior conviction as evidence of his guilt of the charge that we're trying or the case that we are trying today.

The State did not introduce evidence Cross was required to register as a sex offender.

Following additional witnesses in the State's case-in-chief, Cross presented several witnesses in his defense.  Cross also testified and claimed Minor's allegations were simply not true.  Both he and his wife testified they had not visited Minor's home on the day in question, and they denied Cross played hide-and-seek with the children.  Because there was no physical evidence of sexual abuse, the trial became a credibility contest.

At the end of the trial, when charging the law of first-degree CSC with a minor, the trial court explained to the jury:

> Now, ladies and gentlemen, the fact that [Cross] has previously been convicted of criminal sexual conduct with a minor can only be considered by you as an element of the present charge of criminal sexual conduct with a minor first degree and for no other purpose. You must not consider [Cross's] prior record or his prior convictions as any evidence of guilt with respect to the charges for which [Cross] is currently on trial.

The jury found Cross guilty of both first-degree CSC with a minor and committing a lewd act on a minor. The trial court sentenced Cross to an aggregate prison term of twenty-five years. The court of appeals affirmed. *State v. Cross*, Op. No. 2016-UP-257 (S.C. Ct. App. filed June 8, 2016). We granted Cross's petition for a writ of certiorari to review the court of appeals' decision. Cross argues the trial court erred in: (1) refusing to bifurcate his trial to allow the jury to determine guilt of the underlying sexual offense and then determine if he had the requisite prior conviction to establish first-degree CSC with a minor and (2) admitting evidence of his prior conviction for first-degree CSC with a minor in violation of Rule 403, SCRE.

## II. STANDARD OF REVIEW

In criminal cases, appellate courts sit to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The appellate court reviews a trial [court's] ruling on admissibility of evidence pursuant to an abuse of discretion standard and gives great deference to the trial court." *State v. Torres*, 390 S.C. 618, 625, 703 S.E.2d 226, 230 (2010). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Douglas*, 369 S.C. 424, 429-30, 632 S.E.2d 845, 848 (2006). "[T]he conduct of a trial is largely within the discretion of the presiding judge, to the end that a fair and impartial trial may be had." *State v. Heath*, 232 S.C. 384, 391, 102 S.E.2d 268, 272 (1958).

## III. DISCUSSION

In this case, we witness a collision between the State's obligation to prove the elements of the crime charged and a proper application of the South Carolina Rules of Evidence to the introduction of evidence necessary to prove one of those elements. Of course, evidence must first be relevant for it to be admissible at trial. Rule 402,

SCRE. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Nevertheless, Rule 403, SCRE, provides in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Evidence of Cross's prior conviction was undoubtedly relevant, and evidence of Cross's prior conviction had insurmountable probative value; however, the prejudicial effect of that evidence was exceedingly high.

A person commits first-degree CSC with a minor when the person: (1) engages in sexual battery with an individual under eleven years of age or (2) engages in sexual battery with an individual under the age of sixteen and the person is someone who "has previously been convicted of, pled guilty or nolo contendere to, or adjudicated delinquent for an offense listed in Section 23-3-430(C) or has been ordered to be included in the sex offender registry pursuant to Section 23-3-430(D)." S.C. Code Ann. § 16-3-655(A) (2015). Because Minor was thirteen, because there was an allegation of sexual battery, because Cross had a prior conviction for an offense listed in section 23-3-430(C), and because Cross was required to register as a sex offender, section 16-3-655(A)(2) was the basis for upgrading the charge to first-degree CSC with a minor. Otherwise, as noted above, the sexual battery allegations and Minor's age would have supported a charge of second-degree CSC with a minor under section 16-3-655(B)(1).

Because Cross's prior conviction was an element of the crime charged, evidence of that prior conviction had significant probative value. Even Cross acknowledges evidence of the conviction was admissible. However, citing Rule 403, SCRE, Cross argues the probative value of this evidence, at the time it was introduced, was substantially outweighed by the danger of unfair prejudice. Cross contends bifurcation of the trial would have allowed the State to prove this element of the crime and would have completely removed the danger of unfair prejudice. Cross requested the trial court to permit the jury to first hear evidence of the sexual battery element of the first-degree CSC with a minor charge, hear closing arguments and a jury charge, and then deliberate. If the jury concluded the State had proven Cross committed sexual battery, then evidence of the prior conviction would be presented to the jury during the second stage of the trial. The trial court refused this request.

The United States Supreme Court has reviewed the general conundrum we encounter here, but in a setting not involving a request for a bifurcated trial. In *Old Chief v. United States*, 519 U.S. 172, 174 (1997), the defendant was charged with

three crimes: (1) assault with a dangerous weapon, (2) using a firearm in relation to a crime of violence, and (3) violation of 18 U.S.C. § 922(g)(1) (possession of a firearm by anyone with a prior felony conviction). At trial, the defendant argued his offer to stipulate to his prior felony conviction rendered "the name and nature of [his prior] offense"—assault causing serious bodily injury—"inadmissible under Rule 403 of the Federal Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value." *Id.* at 175. The prosecution refused to accept the defendant's stipulation, and the trial court overruled the defendant's Rule 403, FRE objection, thereby allowing the jury to receive evidence of his prior assault conviction. *Id.* at 177. The United States Supreme Court found the evidence of the name and nature of the prior conviction, although relevant, was unnecessary to prove the gun possession charge and was highly prejudicial to the defendant since the prior conviction was similar to the assault charge for which the defendant was on trial. *Id.* at 186. Because of this unfair prejudice, the Court held the name and nature of the defendant's previous conviction was not admissible to prove the felony conviction element after the defendant offered to stipulate to the prior conviction. *Id.* at 191-92. The Court warned that the risk of unfair prejudice to a defendant is "substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." *Id.* at 185.

This Court and the court of appeals have declined to extend the reasoning in *Old Chief* to cases in which a defendant's prior conviction constituted an element of the offense to be proven at trial. For example, in some burglary cases, a first-degree burglary charge is predicated upon one of several statutory aggravating factors, one being when the defendant has "a prior record of two or more convictions for burglary or housebreaking or a combination of both." S.C. Code Ann. § 16-11-311(A)(2) (2015).

In *State v. Benton*, 338 S.C. 151, 153, 526 S.E.2d 228, 229 (2000), the defendant was charged with burglary. The defendant's two prior burglary convictions formed the basis for an upgraded charge of first-degree burglary. The defendant offered to stipulate in camera that he had two prior burglary convictions to avoid the introduction of those convictions to the jury. The defendant argued the evidence was highly prejudicial and its introduction deprived him of due process. *Id.* at 154, 526 S.E.2d at 229. The State refused to accept the stipulation, and the trial court declined to force the State to do so, relying upon *State v. Hamilton*, 327 S.C. 440, 486 S.E.2d 512 (Ct. App. 1997). *Benton*, 338 S.C. at 154, 526 S.E.2d at 229. We affirmed the court of appeals' reasoning in *Hamilton* and upheld the constitutionality of the first-degree burglary statute. *Id.* at 155, 526 S.E.2d at 230.

We reiterated that evidence of other crimes is admissible to establish a material fact or element of the crime charged and stated "[f]or purposes of an element of first degree burglary . . . we conclude the probative value of admitting the defendant's prior burglary and/or housebreaking convictions is not outweighed by its prejudicial effect." *Id.* at 155-56, 526 S.E.2d at 230. We held the defendant's "two prior burglary convictions were offered to prove a statutory element of the current first degree burglary charge, not to suggest [the defendant] was a bad person or committed the present burglary because he had committed prior burglaries." *Id.* at 156, 526 S.E.2d at 230. We advised—to reduce possible prejudicial effects—a trial court should (1) limit evidence solely to the prior burglary convictions without admitting particular facts about the burglaries that form the basis for the prior convictions and (2) on request, instruct the jury on the limited purpose for which the prior convictions can be considered. *Id.* at 156, 526 S.E.2d at 230-31.

Subsequently, in *State v. James*, 355 S.C. 25, 35, 583 S.E.2d 745, 750 (2003), we found the probative value of introducing evidence of seven previous convictions for burglary, when the first-degree burglary statute calls for "two or more," "was outweighed by the very great potential for prejudice . . . and crossed the line established in *Old Chief*," despite the trial court's use of a limiting instruction. Prior convictions of burglary and housebreaking are admissible to prove the prior conviction element of the burglary statute, but the admission of that evidence is still subject to a balancing of the probative value of the evidence versus its prejudicial effect pursuant to Rule 403, SCRE. *See id.* at 34, 583 S.E.2d at 749-50 (noting "none of the relevant authorities nullify the trial judge's traditional role in weighing the probative value of evidence versus its prejudicial effect or suggest that Rule 403 is displaced by operation of section 16-11-311(A)(2)"). We also noted, "[t]he admissibility of prior convictions is always limited by the traditional rules of evidence." *Id.* at 34, 583 S.E.2d at 750.

The admissibility of Cross's prior conviction remains subject to a trial court's Rule 403 gatekeeping duty to determine whether and <u>when</u> that evidence should be admitted. Our holding in *James* clarifies that Rule 403 maintains its efficacy in determining whether such evidence is ultimately admissible. *See* 355 S.C. at 34, 583 S.E.2d at 749-50 (noting *Hamilton* and *Benton* do not nullify the trial court's "traditional role in weighing the probative value of evidence versus its prejudicial effect or suggest that Rule 403 is displaced by operation of section 16-11-311(A)(2)").

Again, evidence of Cross's 1992 conviction for first-degree CSC with a minor had insurmountable probative value in proving the prior conviction element of first-degree CSC with a minor. However, evidence of the 1992 conviction was in no way

probative of whether Cross committed the underlying sexual battery upon Minor in 2005.[3] The danger of unfair prejudice arising from the admission of the 1992 conviction at this stage of the trial was exceedingly high, as Cross was standing trial on charges of first-degree CSC with a minor and committing a lewd act on a minor. *See State v. Brooks*, 341 S.C. 57, 62, 533 S.E.2d 325, 328 (2000) ("When the prior bad acts are similar to the one for which the appellant is being tried, the danger of prejudice is enhanced.").

On the surface, the evidentiary issues in this case resemble the evidentiary issues present in the first-degree burglary cases discussed above. We acknowledge that in this case, the trial court followed the instructions we encouraged in *Benton* to assist in reducing the prejudicial effect arising from the introduction of Cross's prior conviction. *See Benton*, 338 S.C. at 156, 526 S.E.2d at 230-31 (advising that to reduce possible prejudicial effects, the trial court should: (1) limit evidence to the prior burglary and/or housebreaking convictions and (2) on request, instruct the jury on the limited purpose for which the prior crime evidence can be considered); *see also* Rule 105, SCRE ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). Nevertheless, we distinguish this case from the first-degree burglary cases because of the inherently prejudicial stigma a prior sex-related offense undoubtedly carries. This rationale is in keeping with our recognition in *James* that "[t]he admissibility of prior convictions is always limited by the traditional rules of evidence." 355 S.C. at 34, 583 S.E.2d at 750.

"[A] bifurcated proceeding is not required in a non-capital case." *Chubb v. State*, 303 S.C. 395, 397, 401 S.E.2d 159, 161 (1991).[4] "[A bifurcated trial] is not

---

[3] Rule 404(b) of the South Carolina Rules of Evidence may, in certain situations, allow for the introduction of another crime, wrong, or act for reasons unrelated to the State's obligation to prove a prior conviction as an element of first-degree CSC with a minor. Rule 404(b) allows for the introduction of such other acts "to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Of course, the introduction of such evidence must survive a Rule 403 analysis. In the instant case, the record reveals Rule 404(b) was not in play.

[4] Contrary to how the dissent characterizes our reference to *Chubb*, we cite *Chubb* only for the proposition that a bifurcated proceeding is not *required* in a criminal

required by either the common law, the statutory law, or the constitution of this State. It has now been settled by the United States Supreme Court that a bifurcated trial is not required by the United States Constitution." *State v. Bennett*, 256 S.C. 234, 242, 182 S.E.2d 291, 295 (1971). In *Spencer v. Texas*, 385 U.S. 554, 568 (1967), the United States Supreme Court stated, "Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure."

Rule 403, SCRE, provides the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, etc. Here, the probative value of the evidence of the prior conviction is undeniable, as the State must prove the conviction as an element of the crime charged. However, even evidence with such significant probative value remains subject to the application of Rule 403, and the trial court is duty-bound to determine whether the probative value of this evidence is substantially outweighed by one or more of the considerations identified in Rule 403. Evidence of the 1992 conviction is in no way probative of the threshold issue of whether Cross committed a sexual battery upon Minor in 2005. Necessarily, therefore, the question of <u>when</u> evidence of the prior conviction should be admitted comes sharply into focus. In this case, the integrity of Rule 403 and the obligation of the State to introduce necessary evidence are both salvaged by the application of Rule 611(a), SCRE, which provides in pertinent part: "The court *shall exercise reasonable control over the mode and order of* interrogating witnesses and *presenting evidence* so as to (1) make the interrogation and presentation effective for the ascertainment of the truth . . . ." (emphasis added). Under the facts before us, Rule 611(a) <u>required</u> the trial court to exercise control over the order of presenting evidence in such a way that (1) allowed the State to prove an element of the crime, and (2) at the same time guarded against a violation of Rule 403.

The dissent sees the avenue of bifurcation as our unconstitutional adoption or sponsorship of a new rule of procedure. Specifically, the dissent complains that our reliance upon Rule 611(a) is inappropriate. We respectfully disagree. Our reliance upon Rule 611(a) stems from our recognition of the practical effect that should be given to its very terms, i.e., the trial "court shall exercise reasonable control over the . . . order of . . . presenting evidence so as to (1) make the . . . presentation effective for the ascertainment of truth." This is not a disguise for a motivation on our part to change the law or adopt a new rule of procedure. It is simply a plain

---

case. We do not suggest there is a history of bifurcated trials in criminal court in South Carolina.

reading of the English language. While there are certainly other settings in which Rule 611(a) would be applicable, its applicability here is undeniable: a party seeks to introduce relevant evidence, the evidence must be admitted, the evidence has high prejudicial effect, and a party requests the trial court to exercise its responsibility to control the order of presentation of that evidence so as to eliminate that prejudicial effect.

The dissent notes the influence the Federal Rules of Evidence have had upon the drafting of the South Carolina Rules of Evidence. The dissent points out that the "Note" to our Rule 611(a) states that our Rule 611(a) is identical to Federal Rule 611(a). While the wording of the two rules is not identical, we agree the import of the two rules is identical. The dissent then states Rule 611(a) does not "permit the court to create or change procedural rules." Interestingly, Federal Rule 611(a)(1) specifically provides a trial court should exercise reasonable control over the mode and order of presenting evidence "so as to make those *procedures* effective for determining the truth." (emphasis added). Therefore, Federal Rule 611(a)(1) plainly cites the trial court's authority to control the *procedures* inherent in the presentation of evidence. It is apparent the drafters of Rule 611(a)(1) recognized an inherently procedural component of the mode and order of presenting evidence. It is equally apparent that, contrary to the position taken by the dissent, we are changing no procedural rule and are creating no procedural rule. We are simply recognizing what has been there all along.

In *People v. Calderon*, 885 P.2d 83 (Cal. 1994), the defendant was charged with second-degree burglary. He was previously convicted of attempted robbery, and the charging information in the burglary case referenced the attempted robbery conviction as a basis for sentencing enhancement. Under California law, the prosecution was required to prove the prior conviction, not as an element of the crime charged, but solely to secure sentencing enhancement. The defendant moved for bifurcation, requesting that the burglary charge be tried first, and in the event of a guilty verdict, the issue of the prior conviction be tried second. *Id.* at 86. At play in *Calderon* was section 1044 of the California Penal Code, which—in language very similar to Rule 611(a)—provided: "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." The Supreme Court of California found that section 1044 granted trial courts the general authority to bifurcate trial issues and that section 1044 "vests the trial court with broad discretion to control the conduct of a criminal trial." *Calderon*, 885 P.2d at 88.

In *State v. Wareham*, 772 P.2d 960 (Utah 1989), the Supreme Court of Utah addressed the bifurcation issue in a case somewhat similar to the case at bar. The defendant was charged with aggravated sexual abuse of a child. An element of the crime of "aggravated sexual abuse of a child," as opposed to the crime of "sexual abuse of a child" was the defendant's commission of five or more separate acts of the same nature "before or after the instant offense." *Id.* at 961 (quoting Utah Code Ann. § 76-5-404.1 (Interim Supp. 1984)). Thus, five or more such acts constituted an element of the crime charged. The Court declined to decide whether the admission of this evidence, pursuant to the charging statute, was unconstitutional on due process grounds. *Id.* at 963-65. However, the Court then observed:

> Nevertheless, the courts have traditionally, and by necessity, had the power to control the order of proof in the interests of justice, fairness, and efficiency. The imposition of a bifurcation requirement to prevent prejudice is consistent with the power of this Court to supervise the order of presentation of evidence and other procedural matters.

*Id.* at 965. Thus, in language markedly similar to that in Rule 611(a), SCRE, the Supreme Court of Utah clearly recognized that trial courts are required to exercise control over the method and manner of presenting proof in a criminal trial; the object of such control is clear, and that is to promote "justice, fairness, and efficiency," or in the words of Rule 611(a), to make the presentation of evidence "effective for the ascertainment of the truth."

The *Wareham* Court then prescribed the appropriate method of trying such a case. The jury would first hear evidence as to whether the defendant committed the underlying act of sexual abuse of a child. *Id.* at 965. If the jury returned a guilty verdict, the jury would then hear evidence forming the basis for the elevation of the charge to aggravated sexual abuse of a child. *Id.* The Court also stated the trial court should give a limiting instruction at the beginning of the second phase of the trial to the effect that the finding of guilt of sexual abuse must not impact its decision as to whether the defendant previously committed the acts forming the basis for the elevated charge. *Id.* The Court wisely observed that while even the second phase of the trial might not be free from all danger of prejudice, during the first phase of the trial, "the defendant will at least have had the benefit of a determination made without the crushing weight of a multitude of prejudicial charges and evidence in support thereof." *Id.* at 965-66.

We conclude the trial court had the authority to grant Cross's motion to bifurcate. We find the trial court's refusal to grant the motion was an error of law. To repeat, evidence of Cross's 1992 conviction for first-degree CSC with a minor was certainly admissible because, without that evidence, the State could not possibly prove Cross was guilty of the first-degree CSC offense as indicted. However, as we have noted, the probative value of the evidence at the point in the trial when the evidence was introduced was substantially outweighed by the danger of unfair prejudice; that prejudice would have been totally eliminated had the trial been bifurcated.

We conclude the trial court's limiting instruction did not cure the overwhelming danger of unfair prejudice arising from the introduction of Cross's 1992 conviction. In the context of a Confrontation Clause violation, we have recognized that limiting instructions are sometimes insufficient to cure the danger of unfair prejudice. *See State v. McDonald*, 412 S.C. 133, 142, 771 S.E.2d 840, 844 (2015) (rejecting the State's invitation to find a trial court's limiting instruction curative of a Confrontation Clause violation). In *McDonald*, we noted, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* (quoting *Bruton v. United States*, 391 U.S. 123, 135 (1968)). Further, in *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932), Judge Learned Hand noted an instruction to the jury to ignore an objectionable piece of testimony is the "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." He also described some instructions for a jury to disregard evidence as a legal "placebo." *See United States v. Delli Paoli*, 229 F.2d 319, 321 (2d Cir. 1956). The outcome in this case came down to the jury's evaluation of witness credibility, and we are unwilling to assume a jury would have the ability to limit its consideration of such prejudicial evidence to the State's need to prove the prior conviction element of the crime charged.

The procedure approved by the Supreme Court of Utah in *Wareham* would allow the State to present evidence of all elements of the crime charged and would remove any unfair prejudice that arose during the unitary trial. During the first stage of the bifurcated trial, the State would offer evidence in its attempt to prove the underlying factual predicate of section 16-3-655(A)(2): did Cross commit a sexual battery upon Minor, a person less than sixteen years of age? When the State rested, Cross could offer evidence if he chose to do so. Closing arguments and the trial court's charge to the jury would follow the introduction of evidence, and the jury would deliberate. If the jury concluded beyond a reasonable doubt Cross committed

a sexual battery upon Minor, the second stage of the trial would commence. During the second stage, the State—and Cross if he so chose—would offer evidence pertinent to the second element of section 16-3-655(A)(2): has Cross been previously convicted of an offense listed under section 23-3-430(C), or was he required to register as a sex offender pursuant to section 23-3-430(D)? At the beginning of the second stage, the trial court, upon request, would instruct the jury that it must not consider its initial guilty verdict as evidence Cross had been previously convicted of an offense under section 23-3-430(C) or that he was required to register as a sex offender. If the jury found the State had proven this element beyond a reasonable doubt, Cross would stand convicted of first-degree CSC with a minor.

## IV. CONCLUSION

We hold that evidence of Cross's conviction for a specific offense under section 23-3-430(C) was admissible to prove the prior-conviction element of first-degree CSC with a minor. Therefore, the State must be allowed to introduce the conviction. However, we conclude the probative value of the conviction, at the time it was introduced, was substantially outweighed by the danger of unfair prejudice to Cross. The trial court's limiting instruction did not overcome the resulting prejudice. We therefore hold the trial court erred in refusing Cross's request that the trial be bifurcated.

Our holding has no effect upon questions of admissibility of a prior conviction when introduction of such evidence is sought pursuant to Rule 404(b), SCRE, nor does our holding prohibit the introduction of a prior conviction when the defendant "opens the door" to the introduction of such evidence during what would have otherwise been the first stage of the trial.

We reverse Cross's convictions and remand for a new trial on the charges of first-degree CSC with a minor and committing a lewd act on a minor.

**REVERSED AND REMANDED.**


**BEATTY, C.J., KITTREDGE and HEARN, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** The Constitution of South Carolina—article V, section 4A—requires any change to the procedural law of our State to be submitted to the General Assembly. The constitution limits the power of this Court to correcting errors of law. "The Supreme Court shall constitute a court for the correction of errors at law under such regulations as the General Assembly may prescribe." S.C. CONST. art. V, § 5; *see State v. Asbury*, 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997) ("This Court's scope of review is determined by our State constitution which limits our scope of review in law cases to the correction of errors of law." (citing S.C. CONST. art. V, § 5)). In *State v. Francis*, 152 S.C. 17, 149 S.E. 348 (1929), we stated, "We think it not out of place to once again call attention to the fact that in criminal cases, even in those where men have been sentenced to death, this court, under the Constitution of this state, is absolutely limited to the correction of errors of law." 152 S.C. at 61, 149 S.E. at 364. In this case, we violate both provisions of our constitution.

There can be no "error of law" in a trial court's refusal to take a particular action if there is no provision of law that requires the court to do so. In South Carolina, there is no provision of law that even permits a circuit court to bifurcate a non-capital criminal trial. As far as the record of this case indicates—and in my own personal experience—there has never been even one bifurcated non-capital criminal trial in the history of the state courts of South Carolina. It is simply not possible for there to be an error of law when a trial court decides not to take an action the law does not require, the proponent of the action cannot demonstrate is even permitted by the law, and the history of the State indicates has never been taken. There is no error of law.

The majority relies on the Rules of Evidence as authority for bifurcating a non-capital criminal trial. Importantly, we review a trial court's evidentiary rulings for abuse of discretion. *State v. Broadnax*, 414 S.C. 468, 473, 779 S.E.2d 789, 791 (2015). The majority holds, "Rule 611(a) <u>required</u> the trial court to" bifurcate this criminal trial. *See supra*, slip op. at 11. The suggestion the Rules of Evidence require a bifurcated trial is unprecedented. First, we have consistently held that evidentiary rulings are discretionary. *See, e.g.*, *Broadnax*, 414 S.C. at 473, 779 S.E.2d at 791. More importantly,

Rule 611(a), upon which the majority relies specifically, clearly does not require a bifurcated trial. The majority states it is relying on "simply a plain reading of the English language." I respectfully suggest that for a "plain reading" of a rule to support bifurcation, the rule must contain the word "bifurcation." Rule 611(a) does not come close.

Nor does Rule 611(a) permit the court to create or change procedural rules. *See United States v. Colomb*, 419 F.3d 292, 297-98 (5th Cir. 2005) (explaining "the powers of the district court" pursuant to Rule 611(a) are restricted to those "found in the text of the Rule").[5] In fact, there is not one published decision in the entire Rule 611(a) jurisprudence of this Nation in which a court has been so bold to say Rule 611(a) permits a bifurcated trial, much less "requires" it.[6]

---

[5] Our "Note" to Rule 611(a) indicates it was "identical" to Federal Rule of Evidence 611(a) when our rule was adopted. The federal rule has subsequently been amended, which is why it is no longer identical. *See supra*, slip op. at 12.

[6] In response to this statement, the majority has scoured the Rule 611(a) jurisprudence across the country, and now makes reference to only two cases, neither of which support the majority's use of Rule 611(a) for this novel purpose. In the California case, *People v. Calderon*, 885 P.2d 83 (Cal. 1994), the requirement of proving the prior crime was not an element of the crime, 885 P.2d at 87, and the California court specifically did not hold the trial must be bifurcated, stating "we decline to declare a judicially created rule of procedure that would require bifurcation of the determination of the truth of a prior conviction allegation in *all* trials," 885 P.2d at 91. In California—unlike South Carolina—it is apparently permissible to have "judicially created rule[s] of procedure." *Id.*

In the Utah case—*State v. Wareham*, 772 P.2d 960 (Utah 1989)—the requirement was not proving one prior crime, but "more than five separate acts" of sexual violence. 772 P.2d at 961 (quoting Utah Code Ann. § 76-5-404.1(3)(g) (Supp. 1984). More importantly, the Utah case was not decided on any basis remotely similar to our Rule 611(a). Rather, the court based its decision on its interpretation of the underlying criminal statute. *See* 772 P.2d at 966 (explaining "this case can be decided on the preferred ground of statutory construction"). Finally, the Utah court's decision was driven by its attempt to avoid finding the admission of prior crimes violated a Utah constitutional provision that has no counterpart under South

Nor may Rule 403 be read to permit trial courts to bifurcate a criminal trial. Rule 403 permits only that a trial court "may" exclude relevant evidence. The majority necessarily acknowledges the evidence may not be excluded in this case, repeatedly pointing to the "insurmountable" probative value of Cross's prior conviction. In an attempt to side-step the reality the evidence must be admitted, the majority constructs another unprecedented argument that Rule 403 allows a trial court to determine "<u>when</u> that evidence should be admitted." Unsurprisingly, the majority cannot point to one decision in the history of Rule 403 jurisprudence anywhere in the country suggesting Rule 403 authorizes a trial court to bifurcate a trial.

The majority recites a quote from *Chubb v. State*, 303 S.C. 395, 401 S.E.2d 159 (1991), in which this Court referenced the possibility of a "bifurcated proceeding." The majority has used the quote out of context to suggest that there is a history of bifurcated trials in criminal court. *Chubb* was a post-conviction relief proceeding arising out of a burglary case. 303 S.C. at 396, 401 S.E.2d at 160. The crime occurred prior to 1985, when section 16-11-310 of the South Carolina Code (1976) required that a defendant convicted of burglary receive a life sentence unless the jury recommended mercy.[7] The "bifurcated proceeding" we referred to in *Chubb* contemplated only the possibility of a separate sentencing proceeding in which the defendant might argue to the jury for mercy. We did not refer to the type of bifurcated trial Cross requested in which the State presents evidence in two separate phases.

---

Carolina law. *See* 772 P.2d at 966 (stating "we decline to reach the issue of whether § 76-5-404.1(3)(g) is invalid on state constitutional grounds").

[7] Section 16-11-310 provided, "Any person who shall commit the crime of burglary at common law shall . . . be imprisoned . . . during the whole lifetime of the prisoner; *provided, however*, . . . the jury may find a special verdict, recommending him to the mercy of the court, . . . ." *See Patrick v. State*, 349 S.C. 203, 211, 562 S.E.2d 609, 613 (2002) ("Under the old statute, a conviction for burglary without a recommendation for mercy carried a mandatory life sentence."). Section 16-11-310 now contains "Definitions," and the crime of burglary is broken out into three degrees. *See* S.C. Code Ann. §§ 16-11-310 to -313 (2015).

In addition, the burglary statutes were rewritten in 1985.  Act No. 159, 1985 S.C. Acts 603.  There is no longer any provision permitting the involvement of the jury in sentencing for burglary.  The fact we addressed only sentencing, and the 1985 revisions to the burglary statutes, render misleading any modern reference to the now-obsolete "bifurcated proceeding" we referred to in *Chubb*.  *Chubb* is irrelevant to this case.

The majority also suggests the trial court abused its discretion.  The idea that a trial court both committed an error of law *and* abused its discretion in the same decision is of itself unprecedented.  "Discretion," however, does not permit trial courts to take action they do not have the authority under the law to take.  In *State v. James*, 355 S.C. 25, 583 S.E.2d 745 (2003), and *State v. Benton*, 338 S.C. 151, 526 S.E.2d 228 (2000), two cases relied on by the majority for the authority to bifurcate a non-capital criminal trial, this Court struggled with balancing the necessity of introducing evidence of the prior conviction—"insurmountable probative value"—against the danger of the jury using it for propensity.  In neither case did we so much as mention the possibility of a bifurcated trial.  Nor have we ever mentioned the possibility of a bifurcated trial in a non-capital criminal case.  Until today, there was no such thing as a bifurcated non-capital criminal trial in the history of South Carolina.  To suggest that a circuit court abused its discretion by deciding not to take an action that no provision of law permits, that as far as we know has never been taken, and that we do know has never been so much as discussed by this Court as a possibility, is unprecedented, and stretches the concept of an abuse of discretion beyond its rational limits.

But even if we accept the proposition the trial court had the authority to take the unprecedented act of bifurcating a non-capital criminal trial, the trial court in this case actually exercised its discretion.  When Cross asked the court to bifurcate the trial, the court conducted a hearing, considered the request in the terms Cross articulated, and *decided* not to bifurcate.  The majority specifically quotes the trial court's discretionary analysis.  *See supra*, slip op. at 4.  The trial court stated,

> The prejudicial effect, in my opinion, can be addressed by simply explaining to the jury that they're to draw no inference from the fact that he was previously convicted of this.  I have every reason to

> believe this is an intelligent jury . . . . I don't see the
> need to bifurcate.

The trial court considered the State's arguments on probative value, considered Cross's arguments as to the danger of unfair prejudice, balanced the two as Rule 403 requires, and exercised its discretion in deciding not to bifurcate. To find an abuse of discretion in this circumstance is unprecedented.[8]

If the trial court's decision not to bifurcate the trial in this case is an abuse of discretion or an error of law, then there is no discretion remaining under Rule 403. *James* and *Benton* are overruled, because the Court has changed the law. This Court has promulgated a new categorical rule of procedure requiring bifurcation of all criminal trials where a prior offense is an element of the current crime. The Court's decision today is an improper exercise in rulemaking that revolutionizes criminal and civil trial practice under the thin guise of error correction.

If we were to follow the article V, section 4A procedure for rulemaking, I would vote for it. It is regrettable, however, this Court is creating this rule without following the procedure to which we are constitutionally bound. *See* S.C. Const. art. V, § 4A ("All rules and amendments to rules governing practice and procedure in all courts of this State promulgated by the Supreme Court must be submitted by the Supreme Court to the Judiciary Committee of each House of the General Assembly . . . ."); *see also State v. Beaty*, 423 S.C. 26, 43, 813 S.E.2d 502, 511 (2018) (acknowledging that "this Court's

---

[8] We are fond of telling trial judges what broad discretion we give them to balance probative value and unfair prejudice under Rule 403. *See State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014) ("'A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances. We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment.'" (quoting *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003))). In this case, however, we demonstrate that this "great deference" extends only to the point of whether the supreme court disagrees.

authority to promulgate rules is restricted by article V, section 4A of the South Carolina Constitution").

We are not having a "collision" and we are not in a "conundrum."  *See supra*, slip op. at 6, 7.  Like all governmental institutions and all men and women who serve them, we simply obey—or we violate—the constitutional limits on our authority.  It is that simple.

I respectfully dissent.